**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FREE CONFERENCING CORPORATION,

        Plaintiff,

        vs.

INTELIQUENT, INC.,

        Defendant.

CASE NO. 16-7768

JURY DEMAND

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.      Inteliquent is a wholesaler of long distance calls. Its customers are long distance carriers, such as T-Mobile, who pay Inteliquent to transmit and connect its own customers' long distance calls. Inteliquent has no obligation to carry any long distance traffic but rather contracts with long distance carriers to connect their calls to make money. Lately, Inteliquent is taking drastic measures to meet its obligations under its contract with T-Mobile. First, Inteliquent stopped paying the tandem provider with which it contracted to connect T-Mobile's calls. Then, it threatened to file a lawsuit against its tandem provider and others' unless Inteliquent was provided with a new, very low rate to connect T-Mobile's calls. After that lawsuit was filed, Inteliquent then tried to force its tandem provider, through a motion for a temporary restraining order, to provide call connection services without payment. When Inteliquent was finally forced to answer for its conduct in an evidentiary hearing before this Court, Inteliquent withdrew its request and decided to take a different approach. It seems that Inteliquent has now decided to connect its calls employing unlawful methods, using unknown intermediate providers to hack into phone systems to connect the calls. Inteliquent's conduct is in violation of multiple telecommunications rulings, orders and statutes. It is causing calls to Free Conferencing to fail

1

at an alarming rate causing substantial and irreparable harm to Free Conferencing's business, as well as others.

## THE PARTIES

2.     Plaintiff Free Conferencing Corporation ("Free Conferencing") is a Nevada corporation with a principal place of business in Long Beach, California.

3.     Defendant Inteliquent, Inc. ("Inteliquent") is a Delaware Corporation with its principal place of business in Chicago, Illinois.  Inteliquent is a "common carrier" under the Communications Act of 1934, as amended, 47 U.S.C. § 151 et seq. (the "Act").

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 47 U.S.C. §§ 206 and 207.  This case arises under federal statutory and common law and relates to rights identified by federal statute, specifically 47 U.S.C. §§ 201, 202, 203, 206, 207, and 227. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  This Court also has supplemental jurisdiction over the pendant state law claims under 28 U.S.C. § 1367.  Free Conferencing's claims for declaratory and injunctive relief are cognizable under 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

6.     The Court has personal jurisdiction over Inteliquent because its principal of place of business and its telecommunications equipment are located in Chicago, Illinois.

## FACTS COMMON TO ALL COUNTS

**A.**     **The Parties' Businesses.**

7.     Free Conferencing is a leading provider of collaborative communications solutions serving a wide range of businesses, individuals, communities, and organizations around the world.  More than 5 million registered users and upwards of 30 million people each month use Free Conferencing conference call services.  Free Conferencing's flagship product is FreeConferenceCall.com, a reliable, cost-effective, reservation-less and easy-to-use audio conferencing service.

8.     Free Conferencing's business focuses on providing conference calling services without charging organizer fees to the party hosting the calls.  Under its business model, local phone companies known as local exchange carriers ("LECs") are willing to pay Free Conferencing, as well as other subscribers whose services generate a relatively high volume of telephone traffic, to direct some traffic to the LECs' locations.  Free Conferencing also offers conferencing and other services for which users pay fees directly to Free Conferencing.

9.     Free Conferencing's success and growth has come from the high quality and reliability of its services and the introduction of new users to its services when they participate in conferences invited by existing users.  Free Conferencing's users include individuals, Fortune 500 companies, the Congress of the United States, the Department of Homeland Security, colleges and universities, religious institutions, and small businesses throughout the United States.  Free Conferencing also provides conferencing services to residents and businesses in more than 50 countries.

10.     Inteliquent is a telecommunications wholesale carrier based in Chicago with facilities in Chicago, Los Angeles and several other cities. Inteliquent's customers typically consist of other carriers (e.g., T-Mobile), which in turn have customers who make long distance

telephone calls. Inteliquent delivers those calls to LECs (or other intermediate carriers who then deliver those calls to LECs), which in turn transport and deliver the calls to the end user customer (i.e., the called parties, or the persons or entities that receive calls).

11.     Free Conferencing and its conferencing customers are the end user customers of the LECs. An example of the call path from the calling party to the called party (i.e., Free Conferencing), using Inteliquent as an intermediate carrier, is as follows: Calling party (T-Mobile customer), to Inteliquent, to one or more intermediate carriers, to LEC, to a Free Conferencing number.

**B.      Inteliquent's Obligations To Transmit Accurate Call Data And Properly Complete The Calls Its Chooses To Take.**

12.     In today's telecommunications industry, accurate data related to the origin of calls, generally referred to as call signaling information, is a legal requirement and essential to the reliability of communications in the United States. Call signaling information includes meta-data such as the originating phone number (aka, the "calling party number" or "CPN") and "automatic number identification" (aka, "ANI," which makes caller-ID possible).

13.     A single long-distance call will generally cross the networks of not less than three separate telecommunications carriers, but may pass through many more networks before reaching its final destination. If a call is transmitted over congested lines, the result can be poor call quality or call failure. Similarly, a call using Voice over IP (VoIP) technology (which is the most pervasive method today) transmitted over multiple networks often will experience packet loss resulting in poor call quality and call failure. When these problems occur, the telecom system is designed to automatically "flash back" the call to the originator so it can be rerouted and reconnected. The flash back system does not function, however, if the calls have inaccurate CPNs, ANI, or other call signaling information. This not only diminishes the reliability of vital

4

communications services but also creates problems for consumers, businesses, and law enforcement.

14.     Moreover, inaccurate calling party data makes it near impossible for a local phone company, or LEC, to charge the long distance carrier or wholesaler for connecting incoming calls as it is permitted to do.

15.     Recognizing the importance of this issue, in 2012, the Federal Communications Commission ("FCC") ordered in its "Call Completion Declaratory Ruling," that it is an unjust and unreasonable practice in violation of § 201 of the Act for a carrier to fail to take appropriate steps to ensure that calls are completed and that all problems with degraded service are addressed. *See In the Matter Of Developing Unified Intercarrier Compensation Regime*,  27 F.C.C. Rcd. 1351, 55 Communications Reg. (P&F) 400, 2012 WL 387736 (F.C.C.). The FCC also ordered that carriers are responsible for the failures of intermediate providers like Inteliquent and any other wholesalers used by Inteliquent, stating as follows:

> if carriers continue to hand off calls to agents, intermediate providers, or others that a carrier knows are not completing a reasonable percentage of calls or are otherwise restricting traffic (*e.g.*, through impaired service quality), that is an unjust or unreasonable practice prohibited by section 201 of the Act.  Such failures compromise the integrity and reliability of the [Public Switched Telephone Network] and the effectiveness (and universality) of interconnected networks by effectively blocking, choking, reducing, or otherwise restricting traffic to particular locations.

Call Completion Declaratory Ruling, ¶ 12 (footnotes omitted).

16.     The FCC also ordered that failing to provide customers with accurate information as to why their calls are not connected is a deceptive or misleading practice that violates § 202(b) of the Communications Act.  Call Completion Declaratory Ruling, ¶ 13 (footnotes omitted).

17.     As a result of the Call Completion Declaratory Ruling, Inteliquent knows that it has an obligation to take appropriate action to ensure that the calls of T-Mobile and any other

entity for whom it serves as a wholesale intermediate carrier are properly completed and do not experience degraded quality or service, even if it sends the calls to another wholesaler to complete.

**C.**    **Fraudulent Calls Are Transmitted To Free Conferencing Causing Substantial Damage.**

18.    For various nefarious reasons, typically related to cost, a wholesale carrier or intermediate transit provider may intentionally transmit calls over routes that strip, alter, or manipulate call signaling information. One such method of transport involves hacking into a private branch exchange, or "PBX." A PBX is a telephone system that serves a private organization and provides intercommunication between a large number of internal telephone stations. When an outside call is transmitted through a PBX it appears to have been originated within the PBX, thereby altering the call signaling information.

19.    Fraudulent transit providers that manipulate how long distance calls are connected undercut the market price for legitimate call transit routes. They offer below market routes to other transit providers who in turn offer the lower cost routes to call originators and telecommunications vendors like Inteliquent. Such operators often blend these hacked calls with legitimately routed calls in order to disguise their fraud.

20.    It is a relatively straightforward process for technologically sophisticated enterprises like Inteliquent to test call quality and the accuracy of call identification information. Once alerted to the fact that the calls that they are routing are having quality and completion issues, it becomes their responsibility to ensure that customers' calls are routed with accurate information and connected to the receiving party.

21.    Free Conferencing as a high access end user customer of LECs has experienced fraud relating to the manipulation of originating call data and the improper re-origination of calls

that compromise call quality with increasing frequency. Thus, it has established policies and protocols to identify, deter and prevent these practices.

22.     Free Conferencing conducts automated tests multiple times a day to different conferencing numbers to ensure that all calls are connected with the proper originating data. When a call fails or is transmitted to Free Conferencing's network with different originating call information, i.e., changed ANI, that test is re-conducted and when confirmed, the number is then blacklisted from Free Conferencing's network.

23.     Moreover, Free Conferencing constantly monitors its network. It knows that a large volume of calls generally does not originate from the same number, so when call data identifies numbers with unusually high originations Free Conferencing will perform an investigation. If Free Conferencing determines that calling party information is being stripped, altered or manipulated, the originating number will be blacklisted.

24.     Free Conferencing also conducts manual test calls to evaluate: whether calls are properly connected, the quality of the calls, and if the originating data is manipulated.

**D.      Inteliquent Begins Fraudulent Rerouting of Calls to Free Conferencing Immediately After its Failure to Obtain a TRO in a Related Lawsuit.**

25.      On Monday, July 25, 2016, Inteliquent filed a frivolous lawsuit in this Court against Free Conferencing, HD Tandem, and another party. In that suit, Inteliquent claims, despite clear contractual language to the contrary, that HD Tandem, in concert with others, was charging Inteliquent for services it was not providing.   Inteliquent has asserted claims for fraud, RICO, and breach of contract, among others.

26.     As part of its initial filing, Inteliquent sought a temporary restraining order to force HD Tandem to continue to provide services without receiving payment in accordance with the applicable contract. After conducting a lengthy hearing the next day (Tuesday, July 26,

2016), the Court ruled that it could not decide Inteliquent's motion absent an evidentiary hearing. Faced with the prospect of subjecting its witnesses to cross-examination, Inteliquent withdrew its motion and immediately rerouted 80-90% of all calls it was previously sending to HD Tandem.

27.     Starting on Wednesday, July 27, 2016, Free Conferencing' tests and monitoring found tens of thousands of fraudulent call attempts to two CLECs, Northern Valley Communications ("NVC") in South Dakota and Breda Telephone Company ("BTC") in Iowa, where Free Conferencing is an end-user customer.  Since that time through the date of this filing, as many as 80% of the test calls to NVC and BTC failed or were being transmitted to Free Conferencing's network with manipulated ANI.

28.     Free Conferencing's testing also reveals that the fraudulent call attempts are only occurring for calls originated by T-Mobile and T-Mobile MVNO phones, including MetroPCS Communications, Inc.  According to its Quarterly 10-Q Report filed with the SEC on April 28, 2016, Inteliquent is the "sole provider of voice interconnection services for all calls exchanged between T-Mobile and nearly all other providers."  Thus, Free Conferencing believes that Inteliquent (or one of its wholesale carriers) is improperly routing T-Mobile's long distance calls through the PBX of another entity, thereby causing the calls to be re-originated with an "anonymous" or "spoofed" number.  This severe break in the chain of accurate calling party information causes calls to be dropped or severely compromises the quality of the calls to Free Conferencing.

29.     T-Mobile has confirmed that it is routing the calls at issue to Inteliquent for connection.

30.     Free Conferencing's tests also revealed that some Free Conferencing conference numbers are being "pirated," meaning that when a caller attempts to reach a Free Conferencing

conference it is instead connected to chat room for another service. In other instances the caller receives random error messages that are not Free Conferencing error messages and are confusing to the user.

31.     Free Conferencing has communicated its testing results and data on the fraudulent calls to T-Mobile and Inteliquent. Free Conferencing has reached out to both carriers multiple times attempting to work with operations personnel to further investigate and resolve the issues.

32.     By letter dated July 28, 2016, Free Conferencing requested that Inteliquent cease and desist from engaging in the alteration and manipulation of caller identification and call signaling information or using third-party transit service providers who engage in such conduct. Inteliquent responded to the letter with a request for information from Free Conferencing even though Inteliquent is in the ideal position to identify the culprits, as Inteliquent knows to whom it passes its voice traffic and can easily conduct tests to identify quality issues and the manipulation and altering of call signaling information. Inteliquent is also required by the Rural Call Reporting Regulations to track, retain, and report such information.

33.     Inteliquent's conduct is also causing harm to others. Zeno Radio, another high volume end user customer of CLECs, that is transmitted long distance calls from Inteliquent, is experiencing a significant reduction in calls. For example, on Thursday, July 21, 2016, Zeno Radio's users that were able connect dropped from 5,000 to 858, a reduction of approximately 80%.

34.     Free Conferencing is still accumulating data through its own testing, third party testing and data from local exchange carriers.

**D.     <u>Standing And Direct Damage Suffered By Free Conferencing.</u>**

35.     Free Conferencing has standing to bring claims under §§ 201(b) and 202(a). Under § 206, "person or persons injured" – not just a telecommunications "carrier" – can seek

from carriers for any violation of the Act to "the full amount of damages sustained in the consequence of any such violation." 47 U.S.C. § 206. Under § 207, damages can be sought by "any person." 47 U.S.C. § 207.

36. In addition, in adopting its rules to curb the abuses associated with "phantom traffic," the term the FCC uses for calls for which identifying information is missing or masked in ways that frustrate intercarrier billing, the FCC acted pursuant to its authority to interpret and apply the prohibition against unjust and unreasonable practices. 47 U.S.C. § 201(b). In so doing, the FCC created a private right of action for parties to hold accountable carriers that were directly involved in, or permitted, manipulation of call signaling information. See 47 C.F.R. § 64.1601.

37. Free Conferencing suffered an injury in fact due to Inteliquent's violations of the Act, including losing customers, harm to its reputation due to the degraded quality of the calls in Free Conferencing conferences, lost customers due to phantom traffic and false automated messages to Free Conferencing's customers as to why calls are not being completed.

38. In addition to the direct loss of revenues from violations of the Act, the Truth In Caller ID Act, 47 U.S.C. § 227(e), the Rural Call Completion Order, and related FCC orders and regulations, Inteliquent's conduct has damaged Free Conferencing by adversely affecting its growth in users, the other conference participants invited to the call and the associated revenues. Approximately 80% of Free Conferencing's business is the result of the viral effect of word-of-mouth recommendations to use the service and from the positive experience of conference call participants invited to calls by registered users of the service. One lost customer, especially when due to a negative consumer experience, has a negative exponential viral effect. Free Conferencing receives a marketing fee from LECs who terminate calls to its conferencing

bridges, and if those LECs cannot bill for terminating switched access for those calls, or if fewer calls are placed due to lost customers, then Free Conferencing cannot receive the fees to which it is entitled for those calls.

39.     In addition, as part of its conferencing service, Free Conferencing provides its customers with call detail reports relating to the conference calls they join through Inteliquent's phone service.  Those reports include information on the participants of the conference, which come from caller ID data more technically known as ANI.  This information shows up as "spoofed" with an entirely different number that is unrecognizable to the user of the service. When Inteliquent or the intermediate carrier with which it contracts does not comply with its legal obligations to ensure that the caller identification information is transmitted accurately and unaltered, Free Conferencing cannot provide accurate call information to its customers which often results in customer confusion, dissatisfaction, loss of trust in the service and in Free Conferencing as a company, and as a result lost customers and revenue.  This illegal practice damages both the revenues of Free Conferencing and its brand.  Inteliquent, T-Mobile and any intermediate carriers that handle the calls to Free Conferencing conferences are responsible for the integrity of the call information.

40.     Responsibility becomes undeniable once the Inteliquent became aware that caller identification information and other call signaling information for Inteliquent's customers' calls, in Inteliquent's call path, is being altered.

### COUNT I
### (Violation of Section 201 of the Act)

41.     Free Conferencing incorporates by reference the allegation set forth above as if fully set forth herein.

42.     Section 201(b) of the Act, 47 U.S.C. § 201, imposes upon common carriers the

duty to ensure that their practices are "just and reasonable," and declares that all unjust and unreasonable practices are unlawful.

43.     Inteliquent has engaged in unjust and unreasonable practices within the meaning of § 201(b), including but not limited to altering and manipulating the call signaling information and calling party numbers on calls to Free Conferencing conferences, allowing telecommunications traffic with inaccurate call signaling information to be transmitted, failing to comply with the Call Completion Declaratory Ruling, and modifying call signaling information to avoid paying the applicable access charges.

44.     Inteliquent's violation of FCC regulations and orders, as described above, constitutes unjust and unreasonable practices in violation of § 201(b) of the Act.

45.     Free Conferencing has sustained damages as a consequence of Inteliquent's unjust and unreasonable practices in violation of § 201(b) of the Act.

46.     Inteliquent's unjust and unreasonable practices in violation of § 201(b) of the Act caused damages to Free Conferencing for which Free Conferencing is entitled to recover from Inteliquent.  Under §§ 206 and 207 of the Act, Inteliquent is liable for the full amount of damages sustained by Free Conferencing in consequence of Inteliquent's violation of § 201(b), together with a reasonable counsel or attorney's fees.

## COUNT II
### (Violation of Section 202(a) of the Act)

47.     Free Conferencing incorporates by reference the allegations set forth above as if fully set forth herein.

48.     Pursuant to § 202(a) of the Act, common carriers are prohibited from unjustly and unreasonably discriminating in connection with like communications services, and any such unjust and unreasonable treatment is unlawful.

49.     Inteliquent's violation of FCC regulations and orders, as described above, constitutes unjust and unreasonable discrimination in violation of § 202(a) of the Act.

50.     Free Conferencing has sustained damages in consequence of Inteliquent's unjust and unreasonable practices in violation of § 202(a) of the Act.

51.     Inteliquent's unjust and unreasonable discrimination in violation of § 202(a) of the Act caused damages to Free Conferencing for which Free Conferencing is entitled to recover from Inteliquent.  Under §§ 206 and 207 of the Act, Inteliquent is liable for the full amount of damages sustained by Free Conferencing in consequence of Inteliquent's violation of § 202(a), together with a reasonable counsel or attorney's fee.

**COUNT III**
**(Intentional Interference With Contract)**

52.     Free Conferencing incorporates by reference the allegations set forth above as if fully set forth herein.

53.     Free Conferencing currently has millions of registered users who have in signed up for its service and agreed to its contact titled "Terms and Service," pursuant to which they use the service ("Customer Contracts").  The Customer Contracts are valid and enforceable contracts between Free Conferencing and its third-party customers.  Under the Customer Contracts, Free Conferencing's millions of customers receive a dial-in number and an individual access code to allow them to make conference calls using Free Conferencing's conferencing bridges.

54.     Inteliquent knew of the relationship between Free Conferencing, its customers, and the users of its conferencing services, as well as the success and growth Free Conferencing has had in the market.

55.     Inteliquent knew of the Customer Contracts and intentionally and without justification disrupted the performance of the Customer Contracts by, inter alia, preventing large

13

numbers of its customers from using Free Conferencing services or degrading the service in such a way that customers cease using the conferencing services of Free Conferencing, and by making performance of the Customer Contracts by Free Conferencing impossible or nearly impossible.

56.     Inteliquent intentionally and without justification interfered with the Customer Contracts and the relationship between Free Conferencing and Free Conferencing's customers.

57.     In interfering with the Customer Contracts, Inteliquent acted with a desire to harm Free Conferencing that was unrelated to any rational business interest or legal right of Inteliquent's.

58.     The relationship between Free Conferencing and its customers, users, and participants has been disrupted by Inteliquent's conduct described above.

59.     Inteliquent's wrongful conduct caused Free Conferencing to be unable to perform under the Customer Contracts.

60.     Free Conferencing has been harmed by Inteliquent's intentional interference with the Customer Agreements.  Inteliquent's conduct was a substantial factor in causing that harm.

61.     Free Conferencing is entitled to recover from Inteliquent all damages proven at trial arising from Inteliquent's intentional interference with the Customer Agreements.

62.     Inteliquent committed this tort with fraud, actual malice, deliberate violence or oppression.  Inteliquent acted willfully, or with gross negligence as to indicate a wanton disregard for the rights of Free Conferencing and others and is, in addition to actual damages, thus liable for punitive damages for the sake of example and by way of punishing it.

**COUNT IV**
**(Intentional Interference With Prospective Economic Advantage)**

63.     Free Conferencing incorporates by reference the allegations set forth above as if fully set forth herein.

14

64.     Free Conferencing has grown from nothing to approximately 30 million users a month because of the satisfaction of customers with its services and the introduction of its services to new users from the participation of individuals in Free Conferencing conferences. Free Conferencing customers frequently invite non-customers to Free Conferencing conferences, and those introductions to Free Conferencing's services lead non-customers to Free Conferencing's website, where as many as 25% of new visitors sign up and become Free Conferencing customers and which results in approximately 80% of Free Conferencing's viral growth.

65.     Inteliquent knew of the prospective economic advantage Free Conferencing enjoys with the participants in its conferences that are the source of its success and growth, as well as the success and growth Free Conferencing has had in the market.

66.     Inteliquent intentionally and without justification interfered with Free Conferencing's prospective economic advantage and relationships with participants in its conferences that are a principal source of Free Conferencing's growth.

67.     In interfering with Free Conferencing's prospective economic advantage and relationships with participants in its conferences that are a principal source of Free Conferencing's growth, Inteliquent also engaged in wrongful conduct by violating a variety of federal and state laws and regulations.

68.     In interfering with Free Conferencing's prospective economic advantage and relationships with participants in its conferences that are a principal source of Free Conferencing's growth, Inteliquent acted with a desire to harm Free Conferencing that was unrelated to any rational business interest or legal right of Inteliquent's.

69. Free Conferencing has been harmed by Inteliquent's intentional interference with Free Conferencing's prospective economic advantage and relationships with participants in its conferences that are a principal source of Free Conferencing's growth, who would have become customers but for Inteliquent's unlawful and wrongful conduct. Inteliquent's conduct was a substantial factor in causing that harm.

70. Free Conferencing is entitled to recover from Inteliquent all damages proven at trial arising from Inteliquent's intentional interference with Free Conferencing's prospective economic advantage and relationships with participants in its conferences that are a principal source of Free Conferencing's growth.

71. Inteliquent committed this tort with fraud, actual malice, deliberate violence or oppression. Inteliquent acted willfully, or with gross negligence as to indicate a wanton disregard for the rights of Free Conferencing and others and is, in addition to actual damages, thus liable for punitive damages for the sake of example and by way of punishing it.

## COUNT V
### (Declaratory Judgment – Violation of the Act)

72. Free Conferencing incorporates by reference the allegations set forth above as if fully set forth herein.

73. A present, actionable and justiciable controversy exists with respect to the legal rights between the parties. Such controversy arises under the Federal Communications Act, 47 U.S.C. §§ 201, et seq., and under the laws of the United States.

74. On information and belief, absent a declaratory judgment, Inteliquent will continue to fail to meet their obligations to complete calls and will continue to transmit calls with degraded quality and altered and manipulated call signaling information, CPNs, and ANIs.

16

75. It would be unduly burdensome, impractical, and inefficient for Free Conferencing to bring new actions for damages each time Inteliquent wrongfully engage in such conduct.

76. Accordingly, Free Conferencing is entitled to a declaratory judgment, and such further relief based upon that declaratory judgment as the Court deems proper, pursuant to 28 U.S.C. §§ 2201 and 2202, determining that: (a) Inteliquent has engaged in unlawful call signaling manipulation in violation of Sections 201, 202, and 227 of the Act, the CAF Order, and 47 C.F.R. § 64.1601; (b) Inteliquent has failed to comply with the Call Completion Order and the Rural Call Reporting Regulations; (c) Inteliquent has damaged Free Conferencing; and (d) Inteliquent has prohibited from transmitting any traffic bound for Free Conferencing that does not fully comply with the FCC's call signaling rules, 47 C.F.R. § 64.1601, and the Call Completion Order.

## COUNT VI
### (Injunctive Relief)

77. Free Conferencing incorporates by reference the allegations set forth above as if fully set forth herein.

78. Free Conferencing has a likelihood of success on the merits of its claim that Inteliquent and the intermediate carriers to which it sends long distance calls to be terminated in Free Conferencing conferences is transmitting calls down fraudulent paths, manipulating ANI and otherwise causing substantial monetary and non-monetary damages to Free Conferencing. Inteliquent is interfering with Free Conferencing's contracts and prospective economic advantage and business relations and violating a variety of federal and state laws and regulations, including §§ 201(b), 202(a), and 227 of the Act, the CAF Order, 47 C.F.R. § 64.1601; the Truth in Caller Id Act, and committing, and/or aiding and abetting, fraud as detailed above.

17

79. Free Conferencing will suffer irreparable harm for which monetary damages will not make it whole such as the loss of good will, current and future customers, damage to its business relationship with other providers in the telecommunications marketplace and otherwise making it impossible for Free Conferencing to do business with every fraudulent call transmitted by Inteliquent.

80. Free Conferencing is without an adequate remedy at law as Inteliquent's actions are causing the loss of good will, current and future customers and making it impossible for Free Conferencing to do business with every fraudulent call transmitted by Inteliquent. The nature of Inteliquent's fraudulent conduct makes it difficult for Free Conferencing to measure the harm Inteliquent is causing. Free Conferencing can use statistics and expert testimony to establish damages, but the fraudulent nature of Inteliquent's conduct makes it difficult to calculate damages.

81. The harm suffered by Free Conferencing far outweighs any harm that would be suffered by Inteliquent for completing the calls to Free Conferencing in a lawful manner. The only "harm" that would be suffered by Inteliquent is that it would be forced to pay a market rate to terminate the long distance calls it wholesales for T-Mobile rather than the below market rate it pays to intermediate carriers to connect the calls through improper methods.

82. Third parties such as Free Conferencing and T-Mobile's customers and CLECs such as NVC and BTC are also being harmed by Inteliquent's wrongful conduct. Free Conferencing and T-Mobile's customers are harmed because they are unable to participate in conference calls and are receiving misleading and confusing messages. CLECs such as NVC and BTC are harmed because they lack the data necessary to accurate bill IXCs for the traffic to their networks.

83.     Free Conferencing is entitled to preliminary and permanent injunctions enjoining Inteliquent, its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, from any and all unfair, unlawful and fraudulent acts and practices in the course of their business activities, including, without limitation an order prohibiting (a) any altering or manipulating any call signaling information or calling party information for any call originated by an Inteliquent customer and made to any Free Conferencing conference; (b) transmitting any traffic to the public switched telephone network with altered or manipulated calling party information or failing to transmit the telephone numbers received from or assigned to or otherwise associated with the calling party to the next provider in the path from the originating provider to the terminating provider; (c) failing to comply with prohibitions on phantom traffic and manipulation and altering of call signaling information in § 227 of the Act, the CAF Order, and 47 C.F.R. § 64.1601; (d) from transmitting any traffic bound for Free Conferencing that does not fully comply with the FCC's call signaling rules, 47 C.F.R. § 64.1601, and the Call Completion Order; (e) blocking, choking, reducing, or restricting telephone traffic, including to avoid termination charges; (f) failing to take appropriate action to ensure that calls to Free Conferencing conferences are completed and not degraded; and (g) failing to take appropriate action to ensure that callers to Free Conferencing conferences do not received false automated messages as to why their calls were not being completed.

## PRAYER FOR RELIEF

WHEREFORE, Free Conferencing respectfully prays for judgment against Inteliquent for the following relief:

(1)     All damages proved by Free Conferencing at trial, plus interest, and costs;

(2)     An Order declaring and ordering that (i) Inteliquent has engaged in unlawful call signaling manipulation in violation of §§ 201, 202, and 227 of the Act, the CAF Order, and 47 C.F.R. § 64.1601; (ii) Inteliquent has committed unjust and unreasonable acts in violation of Section 201(b) of the Act; Inteliquent has committed unjust or unreasonable discrimination in violation of Section 202(a) Inteliquent damaged Free Conferencing; and (iii) Inteliquent is prohibited from transmitting any traffic bound for Free Conferencing that does not fully comply with the FCC's call signaling rules, 47 C.F.R. § 64.1601.

(3)     Free Conferencing's reasonable attorneys' fees pursuant to 47 U.S.C. § 206 and other applicable provision of law;

(4)     Punitive or exemplary damages to the extent provided by any applicable provision of law;

(5)     The entry of a preliminary and permanent injunction enjoining Inteliquent, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, from (a) any altering or manipulating any call signaling information or calling party information for any call originated by a Inteliquent customer and made to any Free Conferencing conference; (b) transmitting any traffic to the public switched telephone network with altered or manipulated calling party information or failing to transmit the telephone numbers received from or assigned to or otherwise associated with the calling party to the next provider in the path from the originating provider to the terminating provider; (c) failing to comply with prohibitions on phantom traffic and manipulation and altering of call signaling information in § 227 of the Act, the CAF Order, and 47 C.F.R. § 64.1601; (d) blocking, choking, reducing, or restricting telephone traffic, including to avoid termination charges; (e) failing to take appropriate action to ensure that calls to Free Conferencing conferences are completed and

20

not degraded; and (f) failing to take appropriate action to ensure that callers to Free Conferencing

conferences do not received false automated messages as to why their calls were not being

completed.

(6)     Such further relief as the Court deems just and appropriate.

Free Conferencing requests a trial by jury on all counts.

Respectfully submitted,

Free Conferencing Corporation

By:     /s/ Paul J. Kozacky_____
        One of its attorneys

| | |
|---|---|
| Paul J. Kozacky | Stephen Wald (*pro hac vice* pending) |
| Jerome R. Weitzel | Martin P. Desmery (*pro hac vice* pending) |
| Larry J. Lipka | Lauren J. Coppola (*pro hac vice* pending) |
| KOZACKY WEITZEL MCGRATH, PC. | PARTRIDGE SNOW & HAHN LLP |
| 55 West Monroe, 24th Floor | 30 Federal Street |
| Chicago, IL  60603 | Boston, MA  02110 |
| (312) 696-0900 | (617) 292-7900 |